**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gwendolyn Smith, | No. CV-22-01537-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Gwendolyn Smith's appeal from the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Doc. 1). The appeal is fully briefed. (Docs. 14; 16; 17). The Court now rules.

**I.   BACKGROUND**

Plaintiff filed an application for DI benefits in July of 2013, alleging a disability onset date of June 12, 2013. (Doc. 11-6 at 2, 4). Plaintiff's application was denied at the initial stage, upon reconsideration, and by an administrative law judge ("ALJ") after a hearing. (Docs. 11-4 at 12, 28; 11-3 at 27). The Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Doc. 11-3 at 1). Plaintiff appealed the Commissioner's final decision under 42 U.S.C. § 405(g). (Doc. 11-10 at 12).

Her appeal came before Judge Snow of this Court, who ordered the matter remanded for further development of the record. (*Id.* at 18). On remand another ALJ again denied

Plaintiff's claim, (Doc. 11-9 at 31), and the SSA Appeals Council again denied Plaintiff's request for review, (Doc. 11-9 at 2). Plaintiff then timely filed this action seeking review of the Commissioner's final decision.

### a. The Disability Determination Process

To be eligible for Social Security DI benefits, a claimant must, among other requirements, show that she is "under a disability" which existed while she was "insured for" such benefits. 42 U.S.C. § 423(a)(1). A "disability" is in an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The SSA has created a five-step process for an ALJ to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one the claimant is not disabled if she is doing substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At step two the claimant is not disabled if she does not have a "severe impairment," i.e., "any impairment or combination of impairments which significantly limits . . . physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). At step three the claimant is disabled (and entitled to benefits) if her impairment "meets the duration requirement" and "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii).

If not, the ALJ will determine the claimant's "residual functional capacity" ("RFC") by considering "all the relevant evidence" including impairments, "any related symptoms," and resulting "physical and mental limitations" to determine "the most [the claimant] can still do despite [her] limitations." *Compare id.* § 404.1520(a)(4), *with id.* § 416.945(a)(1). At step four the claimant is not disabled if, considering the RFC and the physical and mental demands of the claimant's past relevant work, she can still perform such work. *Id.* § 404.1520(a)(4)(iv), (f). If the claimant cannot perform (or does not have) past work, at step five the claimant is not disabled if, considering her RFC, "age, education, and work experience," she can adjust to other work that exists "in significant numbers in the national

economy." *Compare id.* § 404.1520(a)(4)(v), (g)(1), *with id.* § 404.1560(c). But if the ALJ finds the claimant cannot adjust to other work, she is disabled. *See id.* § 404.1520(a)(4)(v).

### b. The ALJ's Findings

The ALJ first found that Plaintiff was last insured for DI benefits on December 31, 2018. (Doc. 11-9 at 15). At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity between her disability-onset date and her last-insured date. (*Id.*). At step two the ALJ found that Plaintiff's obesity, cervical spondylosis, fibromyalgia, lumbar disc protrusions with annular tear, chronic pain syndrome, small-fiber neuropathy, and knee impairment were all severe impairments. (*Id.*). At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 19).

The ALJ then found that Plaintiff had the RFC to perform light work, except that Plaintiff: could frequently climb ramps and occasionally climb ladders, ropes, and scaffolds; could frequently balance, stoop, kneel, and crouch; could occasionally crawl; could frequently handle, finger, and feel; and should avoid concentrated exposure to extreme cold, and vibration as well as all exposure to hazards such as moving machinery and unprotected heights. (*Id.* at 20).

At step four the ALJ found that Plaintiff could not perform any relevant past work (*Id.* at 29). At step five the ALJ found, based on the testimony of a vocational expert ("VE") that Plaintiff could adjust to other work that existed in significant numbers in the national economy, including in such occupations as: mailroom clerk; storage facility rental clerk; and general office helper. (*Id.* at 30). The ALJ concluded that Plaintiff was not disabled between her alleged onset date and her last-insured date. (*Id.* at 31).

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)

(citation omitted). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). But by the same token the Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### III. ANALYSIS

Plaintiff argues that the ALJ erred both in weighing the medical opinions in the record and in partly discrediting Plaintiff's subjective symptom testimony. (Doc. 14 at 1–2). The Court will consider each issue in turn.

### a. Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony. To discredit subjective symptom testimony an ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036–37 (9th Cir. 2007) (cleaned up). Once a Plaintiff satisfies this test, provided there is "no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, and did not make a finding that she was malingering. (Doc. 11-9 at 21–22, 29). But the ALJ concluded that the evidence in the record was inconsistent with the alleged severity of Plaintiff's symptoms, and

consequently found her less limited than she had alleged. (*Id.* at 20, 24, 29). Because the ALJ did not make a finding that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony. The reasons for an adverse credibility determination are sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Such reasons are clear and convincing where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ gave a number of reasons for discrediting Plaintiff's subjective symptom testimony, which the Court will consider in turn.

### i. *Unexplained Gaps in Treatment*

The ALJ noted that there were significant gaps in Plaintiff's pain treatment from Arizona Pain, reasoning that this suggested that Plaintiff's symptoms had resolved.[1] This is a proper basis for her adverse credibility determination: Ninth Circuit case law "is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Plaintiff, however, argues that the ALJ erred by relying on this reason without giving Plaintiff a chance to explain the gap in her pain treatment. (Doc. 14 at 21) (citing *Singh v. Gonzalez*, 403 F.3d 1081, 1085 (9th Cir. 2014)). But the case Plaintiff cites in support of this proposition is an asylum case, and is therefore inapposite.

It is true, however, that "[w]here a claimant provides evidence of a good reason for not [seeking treatment], her symptom testimony cannot be rejected for not doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989)). But Plaintiff

---

[1] (Doc. 11-9 at 24). The ALJ described the gap as lasting for more than two years. (*Id.*). The gap appears really to have lasted for closer to one-and-a-half years. (*Compare* Doc. 11-16 at 560, *with* Doc. 11-17 at 170). But the actual gap duration is significant enough that this discrepancy does not undermine the ALJ's reasoning.

has not indicated any such evidence in the record or suggested what that "good reason" might be. (*See* Docs. 14 at 6, 21–22; 17 at 9). Indeed, when the ALJ questioned Plaintiff about the length and frequency of her treatment at Arizona Pain during the hearing, Plaintiff explained why she was only attending appointments once per month, but did not mention or try to explain the significant gap in treatment. (Doc. 11-9 at 52–53). Thus, that the ALJ did not discuss possible reasons for the gap was not error: ALJs need only "consider and address reasons for not pursuing treatment that are pertinent to an individual's case." Social Security Ruling 16-3p, 81 Fed. Reg. 14166-01, 14170–71 (Mar. 16, 2016).

The Court concludes that the unexplained gap in Plaintiff's treatment at Arizona Pain is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's subjective symptom testimony.

ii. *Improvement with Conservative Treatment*

The ALJ also noted that Plaintiff "responded well to conservative treatment in contradiction to her testimony of continued disabling symptoms." (Doc. 11-9 at 24). Plaintiff concedes that discounting symptom testimony where symptoms improve with conservative treatment is legally permissible, but argues that this reason does not support the ALJ's determination because the ALJ did not show that Plaintiff's improvement was persistent. (Doc. 14 at 21). Essentially, Plaintiff suggests that the ALJ cherry-picked from the record rather than conducting "a holistic review of the record" and thus chose unrepresentative examples that did not actually "constitute examples of a broader development." (*Id.* at 15 (first quoting *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016); then quoting *Ghanim*, 763 F.3d at 1162).

But the ALJ noted that physical activity seemed to improve Plaintiff's pain and that Plaintiff had asked to wean off most of her medications. (Doc. 11-9 at 24 (citing Doc. 11-16 at 276; 318)). The ALJ then noted that, shortly afterward, there was a significant gap in Plaintiff's treatment during which she stopped attending Arizona Pain (where she had been obtaining Percocet prescriptions). The ALJ reasoned that this series of events "strongly suggest[ed] the claimant's symptoms resolved." (Doc. 11-9 at 24). Plaintiff does not

1  explain why this does not constitute a showing of a broader symptom improvement based
2  on a holistic review of the record. (*See* Docs. 14 at 15–16, 21; 17 at 8). The Court finds
3  that it does. The ALJ's finding was a clear and convincing reason, supported by substantial
4  evidence, for her credibility determination.

      **iii.** *Inconsistency with Objective Evidence*

The ALJ also noted that the objective medical findings in the record tended to contradict the degree of pain and limitation Plaintiff alleged. (Doc. 11-9 at 24). The ALJ noted that although Plaintiff's physical examinations revealed "reduced range of motion in the cervical and lumbar spine, tenderness to palpation in the cervical and lumbar facets[,] and positive straight leg raise," those same examinations had also shown "intact sensation, negative straight leg raise, full strength in the bilateral upper and lower extremities and a smooth and symmetrical gait." (*See id.* at 24–25 (citing Docs. 11-8 at 6, 342–44, 349; 11-16 at 220–229, 378–79, 401)).

Plaintiff argues that the ALJ's interpretation of the record as containing minimal objective findings is incorrect because Plaintiff's medical records show some objective findings which support her claim of disability. (*See* Docs. 14 at 22; 17 at 9). While Plaintiff concedes that the existence of contradictory evidence does not undermine the ALJ's determination, Plaintiff argues that the ALJ wholly ignored the favorable evidence without explanation. But the ALJ did not ignore the favorable evidence. Rather, the ALJ took both the favorable and unfavorable medical findings into account and resolved the conflict by finding that Plaintiff had some limitations but was not as disabled as she had claimed. (*See* Doc. 11-9 at 24–25). The ALJ's resolution of this conflict was reasonable, and the Court defers to it.

Plaintiff also argues that the ALJ's observation regarding Waddell signs was erroneous. Waddell tests are used "to detect nonorganic sources, such as psychological conditions or malingering," for back pain. *Reinertson v. Barnhart*, 127 Fed. App'x 285, 289 (9th Cir. 2005). Three or more positive Waddell signs "is considered clinically significant, such that these signs can weigh against a diagnosis of fibromyalgia." *Buell v.*

*Berryhill*, 716 Fed. App'x 600, 602 (9th Cir. 2017) (citing *Gordon Waddell* et al., *Nonorganic Physical Signs in Low-Back Pain*, 5 Spine 117, 118 (Mar.–Apr. 1980)) (cleaned up). Here, an examination found that Plaintiff had "significant 5 out of 5 Waddell signs that suggest a non-organic basis for her continued pain complaints." (Doc. 11-8 at 44). The ALJ reasoned that this finding "at least raise[d] the question whether the claimant was exaggerating her symptoms." (Doc. 11-9 at 22).

Plaintiff essentially argues that because a positive Waddell test only shows that pain is "non-organic," such a test is not probative of whether a patient is exaggerating her symptoms. (*See* Docs. 14 at 20–21; 17 at 8). But while a positive Waddell test "should not be *equated* with malingering," *Boggs v. Kijakazi*, 2022 WL 1657022, at *1 n.1 (9th Cir. 2022) (emphasis added), it does eliminate one broad causal category of pain (organic pain), which necessarily makes all other possible causal categories (such as psychogenic pain or malingering) relatively more likely. This fact is reflected in the ALJ's reasoning. The ALJ did not equate the positive test with malingering; she merely noted that it "raised the question whether the claimant was exaggerating." The Court finds no error.[2]

The Court concludes that the inconsistency of Plaintiff's symptom testimony with objective medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ's credibility determination.

**b. Medical Opinions**

Plaintiff also argues that the ALJ erred in weighing the medical opinions of four of Plaintiff's medical providers. (Doc. 14 at 13–19). Because Plaintiff's claim was filed before March 27, 2017, pre-2017 SSA regulations apply to her claim. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 & n.3 (9th Cir. 2022). Under these regulations medical opinions are divided into three categories: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r, Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). The ALJ may reject a treating physician's opinion by giving

---

[2] Plaintiff also argues that the ALJ did not identify the testimony she discredited with sufficient specificity. But the Court has no trouble discerning from the ALJ's discussion that she discredited Plaintiff's hearing testimony regarding pain severity and pain-induced limitations, as well as other such subjective complaints in the record.

- 8 -

specific and legitimate reasons based on substantial evidence so long as that opinion is contradicted by another physician's opinion. *Id.* Plaintiff concedes that the ALJ was not required to meet a higher standard to reject the medical opinions at issue. (Doc. 14 at 1, 11–12, 18).

Specific and legitimate reasons include incongruity between a doctor's opinion and the medical records or between his opinion and a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). A contradiction within a doctor's opinion is likewise a specific and legitimate reason for rejecting it. *Valentine*, 574 F.3d at 692. Further, an "ALJ need not accept the opinion of any physician if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### i. *Brian Briggs, M.D.*

Plaintiff argues that the ALJ erred in affording no weight to the opinion of Plaintiff's examining physician, Dr. Briggs. Dr. Briggs opined, among other things, that Plaintiff exhibited poor muscle tone and atrophy, had a dangerous and unstable gate, and required a cane to walk. (Doc. 11-17 at 5–6). The ALJ found Dr. Briggs's opinion unpersuasive because it was inconsistent with the medical evidence in the record. Specifically, the ALJ noted that Plaintiff's treatment providers had consistently assessed her as having full strength in her limbs as well as a smooth and symmetrical gait. (*See* Doc. 11-9 at 28).

Plaintiff argues that Dr. Briggs's assessment of Plaintiff's gait and muscle tone was not inconsistent with Plaintiff's treating providers' observations because Plaintiff was sometimes observed to have an antalgic gait and occasionally reported weakness in her limbs. (Docs. 14 at 16; 17 at 5–6). The Court's review of the record indicates that, during the relevant period, medical providers assessed Plaintiff's gait as normal about three-quarters of the time, noting some abnormality only about one-quarter of the time.[3]

---

[3] (*See* Docs. 11-8 at 49, 54, 55, 56, 57, 59, 61, 65–66, 69, 172, 178, 181, 195, 199, 213, 217, 234, 242, 247, 253–55, 324, 338, 343, 345, 347–48, 349, 359–64, 384, 388, 391, 397, 401, 405, 410, 414, 419, 424, 429, 434; 11-16 at 66–68, 70–76, 115, 190, 193, 207–08, 216, 226–27, 233, 239 246, 252, 259, 266, 274, 282, 290, 298, 306, 314, 322, 330, 338, 509, 518, 526, 565).

- 9 -

Similarly, those providers assessed Plaintiff's limb strength as "normal" or "5/5" about four-fifths of the time, and as less than normal only one-fifth of the time.

Plaintiff also argues that, in noting the lack of corroborating evidence in the record for Dr. Briggs's opinion that Plaintiff required a cane, the ALJ was stating her "opinion that Smith did not need a cane" and improperly playing doctor. (*See* Doc. 14 at 16). But the ALJ was merely assessing whether Dr. Briggs's opinion was consistent with the record, as Defendant's regulations obligated her to do. *See* 20 C.F.R. § 404.1527(c)(4). Moreover, the ALJ's conclusion is supported by substantial evidence. Plaintiff herself testified that no doctor directed her to use a cane, (Doc. 11-9 at 57), and Plaintiff does not cite any objective evidence in the record (apart from Dr. Briggs's opinion) supporting her need for a cane.

Thus, the Court concludes that the inconsistency between the record evidence and Dr. Briggs's opinion is a specific and legitimate reason supported by substantial evidence for rejecting Dr. Briggs's opinion. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (holding that inconsistency of an opinion with objective medical evidence in the record can be a specific and legitimate reason for rejecting that opinion).

### ii. *Michael Steingart, D.O.*

Plaintiff argues that the ALJ erred in affording little weight to the opinion of Plaintiff's treating orthopedic physician, Dr. Steingart. Dr. Steingart opined that Plaintiff: could "work 8 hours a day, 5 days per week on a regular and consistent basis"; could sit for four hours and stand or walk for two hours in an eight-hour day; could lift and carry between ten and fifteen pounds; could reach and stoop occasionally and use her hands and feet frequently; and every 21–45 minutes needed to take a 5–9 minute rest and alternate between sitting, standing, and walking. (Doc. 11-8 at 270).

The ALJ noted a number of inconsistencies between Dr. Steingart's opinion and the evidence in the record. The ALJ first noted that Dr. Steingart opinion that Plaintiff could work eight hours per day is inconsistent with his opinion that Plaintiff can only stand, walk, and sit for a total of six hours. (Doc. 11-9 at 27). Plaintiff concedes that these opinions are inconsistent, but contends that this does not support the ALJ's determination because

the ALJ did not rely on this inconsistency in her decision. (Doc. 17 at 4 n.2). Plaintiff's contention is incorrect. The ALJ specifically noted the inconsistency in discussing why she afforded Dr. Steingart's opinion little weight. (*See* Doc. 11-9 at 27).

The ALJ further noted that the minimal objective findings, such as full strength in Plaintiff's limbs, were inconsistent with Dr. Steingart's opinions regarding Plaintiff's abilities to stand, sit, reach, and maintain a position. Plaintiff argues that the ALJ's interpretation of the record as containing minimal objective findings is incorrect because Plaintiff's medical records show some objective findings which support her claim to disability. (Docs. 14 at 14; 17 at 4). The Court addressed and rejected this argument in discussing the ALJ's rejection of Plaintiff's subjective symptom testimony. The ALJ's resolution of conflicting evidence in the record was reasonable. So was the ALJ's evident finding that observations of full strength in Plaintiff's arms and legs were inconsistent with Dr. Steingart's opinion that Plaintiff could only walk or stand for two hours, had to change positions and take breaks frequently, and could only reach occasionally.

Similarly, the ALJ noted that Dr. Steingart's opinion was inconsistent with Plaintiff's reported improvement with conservative treatment and with her desire to not take additional medications. Again, Plaintiff makes much the same argument on this point as she made in contesting the ALJ's rejection of her subjective symptom testimony. The Court has already considered and rejected this argument. The ALJ's interpretation of the record was reasonable, and the Court defers to it.

The ALJ also noted that Plaintiff's report that she drove from Mesa, Arizona to Flagstaff, Arizona (a journey of some 160 miles which takes about two-and-a-half hours) was inconsistent with Dr. Steingart's opinion that Plaintiff could only sit for 21–45 minutes at a time before having to take a break and switch positions. (Doc. 11-9 at 27). The ALJ reasoned that the trip would have been extremely difficult to make if she was really so limited. Plaintiff argues that even if it would have been difficult, she could have nonetheless made the trip, perhaps by stopping to rest frequently. (Docs. 14 at 14–15; 17 at 11–12). Plaintiff thus essentially offers an alternative interpretation of the record. But

the ALJ's inference—that someone who needs to change positions so frequently would likely not make such a long car journey—was reasonable. The Court defers to the ALJ's interpretation.

Plaintiff also argues that the ALJ erred by rejecting Dr. Steingart's opinion as an inadequately explained checkbox form. (Docs. 14 at 13–14; 17 at 4). But the ALJ did not give this as a reason for rejecting Dr. Steingart's opinion. Rather, as discussed, the ALJ rejected Dr. Steingart's opinion as internally inconsistent and as inconsistent with the medical evidence in the record. The Court concludes that the ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting Dr. Steingart's opinion.

### iii. *Ravi Bhalla, M.D.*

Plaintiff argues that the ALJ erred in assigning no weight to the opinion of Plaintiff's treating rheumatologist, Dr. Bhalla. (Docs. 14 at 17; 17 at 6). Dr. Bhalla opined that Plaintiff: could stand and walk for less than two hours and sit for less than two hours in an eight-hour day; could lift and carry less than ten pounds; needed every 21–45 minutes to rest for 15 minutes and alternate positions; could reach and use her hands occasionally and bend and stoop less than occasionally; and would miss work six or more days per month. (Doc. 11-17 at 296–97).

The ALJ rejected Dr. Bhalla's opinion in part because it was based on Dr. Bhalla's lupus diagnosis and lupus treatment, neither of which occurred until after Plaintiff's date last insured. (*See* Doc. 11-9 at 28). Although medical opinions "containing observations made after the period for disability . . . . should not be disregarded solely on that basis," *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), this nonetheless provides some support for the ALJ's determination, *see Anderson v. Saul*, 818 Fed. App'x 709, 711 (9th Cir. 2020) (citing *Macri v. Chater*, 749 F.2d 540, 545 (9th Cir. 1996)). Plaintiff does not challenge the ALJ's reasoning on this point. (*See* Docs. 14 at 17; 17 at 6).

The ALJ also rejected Dr. Bhalla's opinion because it was inadequately explained and unsupported by Dr. Bhalla's examination records. (Doc. 11-9 at 28). An ALJ "need not accept a treating physician's opinion that is conclusory and brief and unsupported by

clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Bhalla's opinion is a check-box form unaccompanied by explanation, and is therefore conclusory and brief. (*See* Doc. 11-17 at 296–97). And Plaintiff does not contest the ALJ's finding that Dr. Bhalla did not explain the "extreme restrictions" he assessed, including the need to change positions and rest frequently and the need to miss work six or more days per month. (*See* Docs. 14 at 17; 17 at 6).

But Plaintiff does argue that Dr. Bhalla's treatment records do support his opinion. (*See id.*). The Court disagrees. It is true that Dr. Bhalla's notes reflect that Plaintiff had diagnoses of lupus, lumbar disc degeneration, neuropathy, and fibromyalgia, and that Plaintiff had reported localized pain in her lower back, neck, arms, and knee. (Doc. 11-17 at 253). And the notes show that Plaintiff exhibited pain on palpation of her shoulders, buttocks, collarbone, and elbows. (*Id.* at 258). But Doctor Bhalla's records also reflect a host of entirely normal clinical findings, including no neck symptoms, no neurological symptoms, normal appearance, normal range of motion, and a lack of swelling or inflammation in all joints except the right knee. (*Id.* at 253–261). Thus, the ALJ's interpretation of Dr. Bhalla's treatment records as not revealing "any significant abnormalities" was supported by substantial evidence.

Further, no finding in Dr. Bhalla's treatment notes obviously supports Plaintiff's assessed need to switch positions and rest frequently. (*See* Doc. 11-17 at 253–261). Nor is there any obvious reason why Plaintiff would need to miss six or more days of work per month. And the normal findings regarding Plaintiff's wrists and hands appear to contradict Dr. Bhalla's assessment that Plaintiff could only use her hands occasionally. Thus, substantial evidence supports the ALJ's assessment of Dr. Bhalla's opinion as inadequately explained and unsupported by his treatment notes. The Court concludes that the ALJ gave specific and legitimate reasons for rejecting Dr. Bhalla's opinion.[4]

---

[4] Alternatively, any error was harmless because many of the reasons that the ALJ gave for rejecting Dr. Steingart's and Dr. Briggs's opinions—and particularly inconsistency with evidence in the record—apply equally to Dr. Bhalla's opinion. *See Wallis v. Colvin*, 608 Fed. App'x 489, 490 (9th Cir. 2015) (citing *Molina v. Astrue*, 674 F.3d 1104, 1115, 1121–22 (9th Cir. 2012)).

- 13 -

### iv. *Thomas Curtis, P.T., DSc*

Plaintiff argues that the ALJ erred in affording no weight to the opinion of Thomas Curtis, Plaintiff's physical therapist. PT Curtis opined that Plaintiff could: sit for less than two hours and stand or walk for less than two hours in an eight-hour day; could lift and carry between ten and fifteen pounds; could use her right hand continually and her left hand frequently; could reach occasionally and bend or stoop less than occasionally; had to rest for 5–9 minutes and change positions every 21–45 minutes; and would miss work more than six days per month. (Doc. 11-17 at 251–52).

Because physical therapists are classified as "other" sources rather than medical sources, the ALJ was only required to give a germane reason for rejecting PT Curtis's opinion. *Compare* 404.1502(a) (not listing physical therapists as an "acceptable medical source"), *with* 404.1527(f) (ALJs not required to consider all factors relevant to acceptable medical source to reject opinions from non-acceptable medical sources); *see also Cynthia M. v. Comm'r of Soc. Sec.*, 2020 WL 5229447, at *3 (W.D. Wash. Sept. 2, 2020) (citing *Ghanim*, 763 F.3d at 1161).

The ALJ gave this opinion no weight. The ALJ reasoned that, like Dr. Bhalla's opinion, PT Curtis's opinion was rendered after the last-insured date. (Doc. 11-9 at 28). This is a germane reason for rejecting the opinion of a non-acceptable medical source. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir 2016) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

The ALJ also reasoned that PT Curtis's opinion was not supported by his "minimal objective findings during physical examination." (Doc. 11-9 at 28 (citing Doc. 11-17 at 30–77, 251–52)). Plaintiff argues that PT Curtis's examination findings did support his opinion, (Doc. 14 at 18), while Defendant argues the ALJ's conclusion that they did not was reasonable, (Doc. 16 at 12). PT Curtis found on physical examination that Plaintiff had: five-out-of-five strength in her arms and legs; reduced left hand grip; reduced range of motion in her spine; and pain in her neck, back left buttock, left groin, and left leg.[5]

---

[5] (Doc. 11-17 at 56, 73). Plaintiff also argues that PT Curtis assessed Plaintiff as having intermittent upper extremity pain, but PT Curtis recorded this as "reported pain," indicating

Many of PT Curtis's findings clearly and directly correspond to the limitations he assessed in his opinion. PT Curtis's objective findings that Plaintiff had lower back pain and reduced back flexion support his opinion that Plaintiff could only sit for less than two hours and could bend and stoop less than occasionally. His findings that Plaintiff had pain in her left buttock, groin, and leg support his finding that she could only walk for less than two hours. And his finding that she had reduced grip strength in her left hand supported his opinion that she could only use her left hand frequently.

But his assessment that she could only lift and carry between ten and fifteen pounds and could only occasionally reach is somewhat undercut by his findings that she had five-out-of-five strength in her arms and legs. Additionally, there is no clear support in his objective findings for his assessment that Plaintiff needed to frequently change positions and take breaks or for his assessment that she would miss work six or more days per month. Thus, while the ALJ's interpretation of PT Curtis's opinion is perhaps not supported by a preponderance of the evidence, it is supported by such evidence as a rational mind might accept as adequate to support his conclusion. The Court defers to that reasonable interpretation, and therefore finds that the ALJ gave germane reasons for rejecting the opinion of PT Curtis.[6]

### v. *Carol Hutchinson, M.D.*

Plaintiff lastly argues that the ALJ erred in giving great weight to the opinion of Dr. Hutchinson, a state agency medical consultant. Dr. Hutchinson opined in part that Plaintiff: could sit for six hours and stand or walk for six hours in an 8-hour day; could lift and carry 10 pounds frequently and 20 pounds occasionally; could only frequently handle, finger, and feel; had no reaching limitations; and could bend or stoop frequently. (Doc. 11-10 at 86–90). The ALJ discussed Dr. Hutchinson's opinion together with the opinions of several

---

that it was not an objective finding but was based on Plaintiff's self-reported symptoms, which as discussed the ALJ properly discredited. It is therefore not relevant to deciding whether the ALJ's interpretation of PT Curtis's examination records was supported by substantial evidence.

[6] Alternatively, any error was harmless because many of the reasons that the ALJ gave for rejecting Dr. Steingart's and Dr. Briggs's opinions—and particularly inconsistency with evidence in the record—apply equally to PT Curtis's opinion. *See Wallis*, 608 Fed. App'x at 490 (citing *Molina*, 674 F.3d at 1115, 1121–22).

other state agency medical consultants, assigning each weight in proportion to its consistency with the medical evidence in the record. (*See* Doc. 11-9 at 25–26). The ALJ reasoned that Dr. Hutchinson's findings were consistent with Plaintiff's improvement with conservative treatment and the minimal objective findings in the record. And the ALJ gave Dr. Hutchinson's opinion more weight than she gave to the other medical consultant opinions because Dr. Hutchinson's opinion "more accurately consider[ed] all of the claimant's impairments that developed over time," including Plaintiff's neuropathy-caused handling and fingering restrictions and her need to avoid working around vibrations and hazards. (*Id.*).

Plaintiff, without elaboration, argues that this "provides no reason based on substantial evidence to rely on [Dr. Hutchinson's] opinion over the opinions of multiple treating and examining medical providers." (Doc. 14 at 18; *and see* Doc. 17). But the ALJ's reasons for accepting Dr. Hutchinson's opinion while rejecting Dr. Steingart's and Dr. Briggs's opinions are two sides of the same coin. The ALJ found that the evidence in the record showed minimal objective findings as well as improvement with conservative treatment. The ALJ then accepted or rejected medical opinions to the extent they were consistent or inconsistent with this reasonable interpretation of the evidence. The Court has already determined that inconsistency with the record was a specific and legitimate reason for rejecting the opinions of Dr. Steingart and Dr. Briggs. The Court finds that ALJ was, by the same token, also justified in giving great weight to Dr. Hutchinson's opinion because of its consistency with the record.

The Court concludes that the ALJ's determination was free of legal error and supported by substantial evidence.

IV. **CONCLUSION**

For the foregoing reasons,

/ / /

/ / /

/ / /

**IT IS ORDERED** that the Commissioner's decision is affirmed, and the Clerk of the Court shall enter judgment accordingly. To the extent a mandate is required, the judgment shall serve as the mandate.

Dated this 31st day of August, 2023.

*James A. Teilborg*
Senior United States District Judge